**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**TANJA VIDOVIC,**

      **Plaintiff,**                               **Case No.:**

**v.**

**CITY OF TAMPA,**

      **Defendant.**

_____/

**<u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>**

      Plaintiff, Tanja Vidovic, by and through her undersigned counsel, sues Defendant, the City of Tampa, and alleges:

**<u>GENERAL ALLEGATIONS</u>**

1.      Plaintiff, Tanja Vidovic, is a resident of Pinellas County, Florida.

2.      Defendant, the City of Tampa, is a municipal corporation of the State of Florida.

3.      Venue is proper in this judicial district.

4.      Plaintiff was hired by Defendant in November 2008 as a firefighter.

5.      Plaintiff became pregnant in late 2009.  In January 2010, Captain Tim Johnson told Plaintiff this would not have happened if she had kept her legs closed and Captain Don Mauger told Plaintiff to try to keep her legs closed.

6.      In March 2010, while pregnant, Chief Toby Hart informed Plaintiff that she could not perform a physical incentive while on duty while male firefighters were allowed to perform physical incentives while on duty, that Plaintiff would have to take annual leave to perform the incentive.  Plaintiff also was not allowed to use the station designed for shorter people, while

male firefighters were, and was required to perform arm dips where her buttocks touched the ground while male firefighters were not.  On the last knee up, Chief Hart waited until Plaintiff was finished and then stated that one knee did not touch and required her to come back and do it again the following day.  The man in charge of the physical incentive also required Plaintiff but not male firefighters to perform other exercises that were difficult.

7.      In May 2010, Plaintiff graduated from paramedic school.

8.      After Plaintiff returned to work from having a baby, Captain Charles Chapman and others harassed her about pumping breast milk.  In November 2010, Plaintiff was summoned to a meeting with two District Chiefs, her Captain, Captain William Glass and Lieutenant Tim Shuman and informed that she could no longer wash her breast pump in the kitchen but had to take it in a covered container to the HazMat decontamination room to wash it.

9.      In late December 2010, Plaintiff was placed at Station 20 for the day and informed that she could pump in the Captain's room, but he refused to allow her to do so. Consequently, the Lieutenant had to give up his room, was very upset and said that Plaintiff should simply pump in the bathroom.

10.     Also in late December 2010, Plaintiff learned that she was being moved to Station 21, which was substantially farther away, when it was known that she had just bought a house near Station 13 and that she shared a car with her husband.  Plaintiff was not given a locker or a room in which to pump her breast milk at Station 21, so she had to use the computer room and stop pumping if a call came in.  Plaintiff also was required to wait extended periods to pump.

11.     In January 2011, firefighter Robert Menendez at Station 21 stated during dinner cleanup that "women would be so much better if we could train them like dogs."

12.     In May or June 2011, Captain Chapman, Lieutenant Eric Irons and Lieutenant Danielle Spradlin reprimanded Plaintiff for having a coffee cup in the back of the rescue unit, while male firefighters were not reprimanded for doing the same thing.  Chapman also told Plaintiff that it is better to be seen and not heard at this station and that it was best if she moved to another station.

13.     In July 2011, Plaintiff requested a transfer to Station 10.  Acting Captain Spradlin gave Plaintiff a poor transfer evaluation that she did not deserve.

14.     In April 2012, Plaintiff was approved as a Paramedic of Record and she and Captain Christopher Shepherd transferred to Station 22.

15.     After the transfer, Shepherd told Plaintiff she "looked good when she sweats" and "she should move slower, that he liked it slow."  Also, when Plaintiff went jogging with him, he said to Plaintiff "no one would notice if we disappeared into the woods for 20 minutes."  Plaintiff requested that he stop making such comments and stated that she was married.  Shepherd stopped talking to Plaintiff after that.

16.     In October 2012, Shepherd told Plaintiff that women make less than men because women take too much time off to have children, that you can't put male race horses against female race horses, men are stronger and faster, it's about manual labor and that we have had to lower the standards three times so we can hire women as firefighters.

17.     Also in October 2012, Plaintiff passed the state examination for Driver/Engineer certification.

18.     In November 2012, Plaintiff received her Pump Operator certificate.

19.     In February 2013, Plaintiff took the Driver/Engineer examination for the purpose of being promoted.

20.     In March 2013, Plaintiff was informed that she had scored well enough on the examination to be placed on the promotion eligible list.

21.     Also in March 2013, Captain Shepherd told Plaintiff that she should change shifts because she gets mad too easily and he sees the baby side of her come out.  He also informed Plaintiff that other stations send her back from jerrying because no one likes her and that she doesn't want to move up, she lacks ambition and has no goals.  He said to Plaintiff that she should take her name off the drivers list; that he would not sign off on her driving or allow her to be promoted.

22.     In April 2013, Plaintiff was summoned to a meeting with Captain Shepherd and District Chief Johnnie Benniefield at which Shepherd stated that he would not work with Plaintiff anymore and would not give her a good evaluation even though her attitude and performance had not changed.  The Chief asked Plaintiff to write a DA-52 on what was discussed at the meeting and she did.  Plaintiff later tried to retract the DA-52 at Shepherd's request.  Plaintiff also asked to be switched to the C shift.

23.     In May 2013, District Chief Benniefield instigated an official investigation of the issues between Captain Shepherd and Plaintiff.  Plaintiff asked again that the whole thing be forgotten and Benniefield rejected her request.  Plaintiff then requested a transfer to Station 16B. Plaintiff began to be jerried out to other stations almost every shift and Benniefield refused to sign off on her being an acting Driver/Engineer.

24.     In June 2013, Plaintiff became pregnant with her second child.

25.     Also in June 2013, when Plaintiff returned to Station 22 after being jerried out to Station 21, Captain Shepherd and other male firefighters shunned her.

26.     Plaintiff put in a request with District Chief Benniefield for a date to be signed off to relief drive.  He informed her that she would be tested for relief driver in early July 2013, but no test was ever given.

27.     Near the end of June 2013, Plaintiff was informed that she was being transferred to Station 15.

28.     In early July 2013, Captain Shepherd wrote a poor transfer evaluation for Plaintiff.  Captain Ray Torres at Station 15 told Plaintiff that Shepherd and about 30 others had contacted him to warn him about her and that she was transferred to Station 15 because her family only had one car and therefore it would be difficult for her to travel so far.

29.     After Plaintiff's transfer, when a female firefighter was talking about wanting to start a family, Captain Torres stated "I can be a sperm donor."  Plaintiff also heard him speaking poorly about her many times while she was assigned to Station 15.

30.     Near the end of July 2013, Plaintiff was reassigned to Station 22.   Captain Shepherd told Plaintiff "we are not friends" and instructed her to move all the beds and sweep and mop behind them, scrub the dumpster daily, walk the yard for trash, weed the garden beds, sweep and mop the apparatus floor daily and wash all the windows inside and out.  During a break when the crew went to the store, Shepherd instructed Plaintiff to go in separately from the rest of the crew.  He also ordered Plaintiff to put her hair up after previously stating that it was acceptable to wear her hair down after 10:00 p.m. and before going home in the morning.

31.     Plaintiff called Kimberly Marple in Human Resources and asked to see her to discuss the official investigation instigated by District Chief Benniefield.

32.     District Chief Benniefield came to the station and Plaintiff again requested drive time at a busier station, to be signed off to relief drive and a meeting with personnel or Human

Resources because, Plaintiff stated, she thought she was being treated unfairly.  Plaintiff also requested a transfer to Station 16C.

33.     In early August 2013, Plaintiff was jerried to Station 20 where District Chief Benniefield pulled her into the Captain's room with Captain Glass and stated that it was fine if Plaintiff spoke with HR, but if it was a Fire Department-related issue, she needed to go through channels.  Plaintiff then put in a request to speak with HR.

34.     In mid-August 2013, Plaintiff called Kimberly Marple and left a voicemail stating that she had requested a meeting with HR three times and had not received a response.  Plaintiff also requested diversity training for managers and supervisors.

35.     In late August 2013, several events occurred:

   a.     Captain Shepherd wrote two memos to Captain Karl Wolf at Station 16 criticizing Plaintiff;

   b.     District Chief Benniefield signed off two males to relief drive, one of whom, David Biblioni, was in Plaintiff's class and the other, Joshua Baxter, who had less seniority than Plaintiff;

   c.     Plaintiff contacted Captain Jace Kohan, secretary/treasurer of the Union, regarding issues she had brought up with him a couple of months prior but to which he did not respond.  Plaintiff told Kohan that OSHA guidelines state there must be a female bathroom as well as a male bathroom and that a female dressing room must be provided if there is no privacy wall;

   d.     Plaintiff e-mailed Kimberly Marple that she had researched the bathroom and dressing room issues and sent the OSHA standards to the Union;

  e.  Plaintiff also e-mailed Marple about her request that when she went on light duty for pregnancy that she be allowed to maintain the schedule of 24 hours on and 48 hours off to allow for childcare for her daughter.  Plaintiff also asked Marple if there was any word on diversity training;

  f.  Plaintiff wrote a DA-52 to Personnel Chief Joe Provenzano requesting that when she went on light duty for pregnancy that she be allowed to maintain the schedule of 24 hours on and 48 off, and gave a copy to Captain Kohan; and

  g.  Plaintiff's transfer to Station 16 went into effect.

36.  In September 2013, Plaintiff's request for diversity training was denied and Kimberly Crum in Human Resources rejected her complaints about the lack of separate bathrooms for female firefighters.  Plaintiff also e-mailed other female firefighters about the lack of privacy curtains, women's bathrooms and a pregnancy policy.

37.  In October 2013, Captain Lawson Carter disseminated a false written report about Plaintiff to Union members and moved to kick Plaintiff out of the Union.  Plaintiff was voted out pending review by the legal department.  Her response to Carter's false report was distributed to the entire department.  Plaintiff reported all of these events to Personnel Chief Provenzano and he responded that Carter had a First Amendment right to disseminate the information about Plaintiff.  Plaintiff also reported Carter's actions to Human Resources, who did nothing.

38.  Also in October 2013, Captain Wolf gave Plaintiff a good performance evaluation and reported to the District 1 Commander that Plaintiff had completed her Driver/Engineer Performance Standards Program book and demonstrated that she was capable as a relief driver. After that, Plaintiff was finally approved as a relief driver.

39.     In December 2013, Plaintiff asked Captain Kohan that a pregnancy policy be discussed and implemented during the next Union contract negotiations.

40.     In January 2014, Captain Wolf was about to retire and he wrote a positive report about Plaintiff to the next Captain.

41.     In February 2014, Plaintiff gave birth to her second child and took seven weeks off.

42.     In May 2014, Plaintiff was written up for backing a fire truck into an ice machine while three men who had done the same thing before Plaintiff were not written up.

43.     In September 2014, Plaintiff and another woman were passed over for promotion to Driver/Engineer in favor of male firefighters.  Two of the men promoted scored lower on the test than Plaintiff did and the other woman passed over, Normia Stephens, scored higher than all of the men who were promoted.

44.     Also in September 2014, a male firefighter, Justin Battles, compared blood to breast milk and said that diseases are carried through breast milk.

45.     In October 2014, Plaintiff reported to Kimberly Marple in Human Resources that she had not been promoted to Driver/Engineer and was told by other firefighters that she was passed over because she did not have HazMat certification.  Plaintiff informed Marple that eight of the men promoted also were not HazMat certified and that she had previously requested but was denied HazMat training.  Plaintiff stated that she met with the Fire Chief who told her she was not promoted because of education, community involvement and leadership skills.  Plaintiff has a Bachelors degree and had been very involved in the community.  Plaintiff was on the board in a number of organizations, took the lead in beginning community orchards in parks, led a gardening group with over 2000 members and was a mentor for local students.  Marple's

response was that she was forwarding Plaintiff's complaint to the new Employee Relations Specialist.

46.     In November 2014, Plaintiff suggested to Captain Kohan that the Union contract negotiations should address the issue of pregnant firefighters being assigned to light duty because pregnancy is not an injury or illness and being placed on light duty hampers their careers.

47.     In February 2015, Plaintiff again took the Driver/Engineer examination but it was graded unfairly.  Her grievance regarding the grading was denied in August 2015.

48.     In March 2015, Plaintiff again asked for diversity training, anti-harassment training and sensitivity training for managers and supervisors.  Plaintiff received no response. Plaintiff also reported to Kimberly Marple that she was upset about firefighter Hannah Gray being bullied and harassed on and off the job.  No one did anything to stop the bullying and harassment or punish it.  Instead, Kimberly Crum told Plaintiff it was protected speech and that the City would not get involved.

49.     Also in March 2015, Plaintiff became pregnant with her third child.

50.     In April 2015, Plaintiff reported to Crum that since she had complained of the need for anti-harassment training, leadership training and diversity training, she had been jerried two out of three shifts to the rescue unit, and that both times male firefighters with less time on the job were selected to drive when normally drivers are selected by seniority.

51.     Also in April 2015, Plaintiff asked the Personnel Chief and Personnel Captain that she be allowed to maintain the schedule of 24 hours on and 48 hours off when she went on light duty for pregnancy.  Plaintiff received no response to her request.

52.     On May 19, 2015, Plaintiff met with the Fire Chief and his assistant.  Plaintiff told the Fire Chief the following:  Captain Shepherd (and two other Captains) sexually harassed her, Shepherd asked Plaintiff to have sex with him and when Plaintiff turned him down, he required her to scrub dumpsters and took other adverse actions against her.  Plaintiff reported the harassment to District Chief Benniefield, Chief Huff and Human Resources.  Benniefield excluded Plaintiff from the investigation and Human Resources did nothing.  Plaintiff and others being harassed were moved to other stations while the harassers remained at their stations, against regulations.  Captain Lawson Carter harassed Plaintiff and attempted to get her voted out of the Union.  Chief Provenzano told Plaintiff that Carter was within his First Amendment rights. The Captains need anti-harassment, sensitivity and leadership training.  Plaintiff was skipped for promotion despite her seniority, education and involvement in the community.  Captain Chapman harassed Plaintiff about pumping her breast milk.  He required Plaintiff to pump in the HazMat decontamination room.  Subsequently, Plaintiff was allowed to use a small closet but the rest of the crew objected, resulting in Plaintiff being jerried.  Nothing was done about the harassment. A pregnancy policy is needed.  Plaintiff is pregnant and is requesting a 24 hour schedule.  There should be a separate female bathroom at her station.

53.     On May 28, 2015, Plaintiff filed a Charge of Discrimination with the EEOC and the Florida Commission on Human Relations alleging gender discrimination, sexual harassment and retaliation for her complaints of discrimination.

54.     On June 19, 2015, District Chief Mark Bogush pulled Plaintiff off a fire even though he informed her that she had done everything correctly.  Bogush made complaints to Acting Captain Ben Kozich about Plaintiff working while pregnant.

55.     On June 30, 2015, Captain David Gillen and District Chief Bogush gave Plaintiff an unmerited oral counseling for allegedly not communicating through proper channels.

56.     On July 6, 2015, Plaintiff was jerried to the rescue unit while a male firefighter with less seniority was assigned to drive the engine.

57.     On July 16, 2015, Plaintiff e-mailed HR regarding a number of events of sexual harassment and retaliation against her.

58.     On July 21, 2015, District Chief Bogush gave Plaintiff an oral counseling that she must put up her hair or cut it when her hair did not violate any rule, regulation or policy and other firefighters were allowed to have their hair out of compliance.  That same evening, after Plaintiff had driven the engine all day at Station 16, a relief Captain came in and removed her from driving and replaced her as driver/engineer with a male firefighter with less seniority.

59.     On July 28, 2015, Plaintiff e-mailed HR at their request regarding acts of sexual harassment and discrimination against her.

60.     On August 2, 2015, Plaintiff again requested that a pregnancy policy be implemented and that she be given an alternative light duty status for her pregnancy that would allow her to keep her same schedule.  District Chief Bogush ordered her to wear a men's t-shirt, stating that a tattoo she had when she was hired showed too much when she wore the women's t-shirt.  At the same time, male firefighters with tattoos were allowed to have their tattoos show noticeably while wearing the men's t-shirt.

61.     On August 7, 2015 and again on October 26, 2015, Plaintiff's requests for alternative light duty status during her pregnancy were denied.

62.     On August 11, 2015, Plaintiff was summoned to a meeting with Personnel Chief Jace Kohan and District Chief Bogush and was instructed that she could no longer submit any

complaints to HR about discrimination, harassment or retaliation.  Plaintiff was also told that she was not being harassed.

63.     In early September 2015, Plaintiff filed an Amended Charge of Discrimination with the EEOC and the Florida Commission on Human Relations alleging gender discrimination, sexual harassment and retaliation.

64.     On October 31, 2015, Captain Gillen gave Plaintiff an unmerited poor performance evaluation.  District Chief Bogush and Fire Chief Thomas Forward both signed off on the evaluation.

65.     On November 3, 2015, Plaintiff requested of Captain Gillen that a female bathroom and locker room be installed in Station 16.  Three days later, Gillen informed Plaintiff she had to leave the bathroom if a male was in there, she would be written up if she failed to do so and that she should stop asking for a bathroom for female firefighters.

66.     Also on November 6, 2015, Plaintiff was summoned into a meeting with District Chief Bogush, Captain Gillen and Personnel Chief Kohan and ordered to undergo a fit for duty test that same day.  No male firefighter was required to undergo such a test.  The test was made more difficult than the normal test by requiring Plaintiff to complete it in bunker gear.  Plaintiff passed the test and was cleared for duty by Tampa Fire Rescue's physician and her own health care provider.

67.     Around this same date, District Chief Bogush informed Plaintiff that it was well known around the entire department that she had filed a Charge of Discrimination with the EEOC.

68.     On November 24, 2015, a health care provider for Plaintiff stated that she was capable of performing her firefighter duties.

69.     On November 25, 2015, another health care provider for Plaintiff also stated that Plaintiff could perform her firefighter duties.

70.     Thereafter, Personnel Chief Kohan called both health care providers challenging their statements that Plaintiff could perform her firefighter duties and informed one of the providers that she would be liable and could lose her license if something happened to Plaintiff or her baby.  As a result, one of the providers changed her opinion.

71.     On December 3, 2015, District Chief Bogush placed Plaintiff on light duty status giving her no opportunity to make arrangements with her family to accommodate her new schedule.  Her request to work her light duty with Patricia Dempsey in Defendant's Public Education office was denied and she was assigned to work with Chief Kohan and Captain Baughman, both of whom she had reported as having retaliated and discriminated against her.

72.     On December 15, 2015, Plaintiff gave birth to her third child.  Before that date, Plaintiff asked to use all of her accrued annual and sick leave before using FMLA leave.  Her request was denied.

73.     On March 9, 2016, Plaintiff was informed by District Chief Bogush that she was required to provide a TFR 10 stating she was cleared to return to full duty.

74.     On March 12, 2016, Plaintiff was abruptly transferred to Station 1 for as long as she pumped breast milk at work for her new baby.  Station 1 has a much higher call volume than Station 16, where Plaintiff had been assigned for three years and the high call volume prevented Plaintiff from pumping as needed.  Plaintiff also had been harassed by multiple people in the past at Station 1.  Plaintiff reported her concerns about her new assignment to Human Resources.

75.     On March 18, 2016, Plaintiff submitted a complaint of harassment by District Chief Bogush to Human Resources.

76.     Also in March 2016, male firefighters with less seniority than Plaintiff were assigned as drivers instead of Plaintiff and Plaintiff was jerried to the rescue unit instead of male firefighters with less seniority than her.

77.     On March 17, 2016, Plaintiff received a Notice of Right to Sue Defendant from the United States Department of Justice.

78.     On March 21, 2016, Plaintiff was informed that she was required to attend a pre-disciplinary hearing scheduled for March 24, 2016.

79.     Plaintiff has exhausted all administrative remedies required by law.

80.     All conditions precedent to the institution and maintenance of this action have occurred or been performed.

81.     Plaintiff at all times was and remains qualified to perform her job.

## COUNT I – GENDER DISCRIMINATION

82.     This is an action for damages and injunctive relief against Defendant for gender discrimination in violation of the Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

83.     Plaintiff realleges each of the General Allegations above as though fully set forth herein.

84.     Defendant at all times material hereto was an employer and covered entity within the meaning of Title VII and the employer of Plaintiff.

85.     Plaintiff is a member of a protected class.

86.     Plaintiff was and is qualified to do her job.

87.     Defendant intentionally subjected Plaintiff to numerous adverse employment actions and intentionally discriminated against her because she is a female.

88.     Defendant treated similarly-situated employees outside her protected class – i.e., male firefighters – more favorably than it treated her.

89.     Defendant's discriminatory conduct was intentional.

90.     As a direct and/or proximate result of Defendant's conduct, Plaintiff has sustained damages and has been compelled to retain the services of the undersigned attorney.

WHEREFORE, Plaintiff, Tanja Vidovic, demands judgment against Defendant, City of Tampa for the following relief pursuant to §§ 42 U.S.C. §2000e-5(g) and 1981a:

a.     Back pay;

b.     Employment benefits;

c.     Compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses;

d.     Interest;

e.     Costs and attorneys' fees;

f.     An injunction against further discriminatory practices;

g.     Promotion to Driver/Engineer and salary increase; and

h.     Other equitable relief as the Court deems appropriate.

## COUNT II – SEXUAL HARASSMENT/HOSTILE WORK ENVIRONMENT

91.     This is an action for damages and injunctive relief against Defendant for sexual harassment and hostile work environment in violation of Title VII.

92.     Plaintiff realleges each of the General Allegations above as though fully set forth herein.

93.     Defendant at all times material hereto was an employer and covered entity within the meaning of Title VII and the employer of Plaintiff.

94.     Plaintiff is a member of a protected class.

95.     Plaintiff was subjected to unwelcome harassment because she is a member of a protected class.

96.     The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

97.     Defendant is liable for the harassment.

98.     The harassment was intentional.

99.     As a direct and/or proximate result of the harassment, Plaintiff has sustained damages and has been compelled to retain the services of the undersigned attorney.

WHEREFORE, Plaintiff, Tanja Vidovic, demands judgment against Defendant, City of Tampa for the following relief pursuant to §§42 U.S.C. §2000e-5(g) and 1981a:

a.      Back pay;

b.      Employment benefits;

c.      Compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses;

d.      Interest;

e.      Costs and attorneys' fees;

f.      An injunction against further harassment;

g.      Promotion to Driver/Engineer and salary increase; and

h.      Other equitable relief as the Court deems appropriate.

16

## COUNT III – RETALIATION

100.    This is an action for damages and injunctive relief against Defendant for retaliation in violation of Title VII.

101.    Plaintiff realleges each of the General Allegations above as though fully set forth herein.

102.    Plaintiff engaged in numerous instances of activity protected under Title VII.

103.    Plaintiff suffered and continues to suffer adverse employment actions because of her statutorily-protected activity.

104.    Defendant's retaliatory conduct was and is intentional.

105.    As a direct and/or proximate result of Defendant's conduct, Plaintiff has sustained damages and has been compelled to retain the services of the undersigned attorney.

WHEREFORE, Plaintiff, Tanja Vidovic, demands judgment against Defendant, City of Tampa for the following relief pursuant to 42 U.S.C. §2000e-5(g) and 1981a:

a.    Back pay;

b.    Employment benefits;

c.    Compensatory damages, including damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other nonpecuniary losses;

d.    Interest;

e.    Costs and attorneys' fees;

f.    An injunction against further retaliation;

g.    Promotion to Driver/Engineer and salary increase; and

h.    Other equitable relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all counts so triable in this action

/s Wendolyn S. Busch
WENDOLYN S. BUSCH, ESQUIRE
Florida Bar Number 817287
LAW OFFICES OF
WENDOLYN S. BUSCH, P.A.
Post Office Box 221
Odessa, Florida  33556-0221
Telephone:  (813) 600-5332
Facsimile:   (813) 600-5957
wb@wendybusch.com
Attorney for Plaintiff, Tanja Vidovic