TANJA VIDOVIC,

      Plaintiff,

v.                                 Case No: 8:16-cv-714-T-17AAS

CITY OF TAMPA,

      Defendant.

_____

## ORDER

This is a Title VII employment discrimination case. The Court now considers the City's Motion for Summary Judgment (the "**Motion**") (Doc. No. 63) and Ms. Vidovic's Memorandum in Opposition (the "**Response Memorandum**") (Doc. No. 84).[1] After review, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    Subject Matter Jurisdiction

The Court is satisfied that it properly exercises subject matter jurisdiction under 28 U.S.C. § 1331. The parties do not contest the Court's jurisdiction in this case, and the Court sees no basis to decline jurisdiction.

## II.    Legal Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of

---

[1] The Court also considered all of the cited record evidence and briefings submitted in support and opposition of the Motion.

material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden by "negating an element of the non-moving party's claim," or by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id.*

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1116 (11th Cir. 1993). If the moving party succeeds in discharging the initial burden, the burden shifts to the non-moving party to demonstrate that there is a genuine issue of material fact that precludes summary judgment. *Clark,* 929 F.2d at 608. A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In assessing the sufficiency of the evidence, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997).

## III.    Factual Background

The record evidence comprises volumes of depositions, exhibits, and affidavits, and the parties agree on very few facts. Indeed, the parties dispute nearly all of the relevant facts, except the date on which Ms. Vidovic began her employment, took a departmental examination, became pregnant, filed a discrimination charge, gave birth to her child, and filed this lawsuit. *Undisputed Facts*, Doc. No. 80, ¶¶ 1, 3, 4, 7-9. Of course, as explained above, the Court construes all facts and inferences in the record in favor of Ms. Vidovic when ruling on this Motion.

Tampa Fire Rescue is a City department that operates under an established and well-structured chain of command. *Motion*, Doc. No. 63 at 1. In ascending command order, the different Tampa Fire Rescue ranks are firefighter, captain, district chief, shift commander, and the fire chief. *Id.* While firefighters must generally comply with direct orders and follow the chain of command, there are exceptions to this general policy in certain limited circumstances. *Chain of Command*, Doc. No. 63-22 (stating that supervisors should contact their next "higher-level supervisor and so on" in certain circumstances).

The Plaintiff, Tanja Vidovic, began her employment with the City in November 2008 as a firefighter assigned to Station 13. *Undisputed Facts*, Doc. No. 80, ¶ 1. Since she began her employment with Tampa Fire Rescue, Ms. Vidovic claims that she has been sexually harassed by her colleagues and supervisors at the fire department. *Response*, Doc. No. 84-1 at 2. Ms. Vidovic complained about the harassment to more senior officers with Tampa Fire Rescue, but did not immediately report the incidents to human resources because she feared retaliation. *Id.* In July 2009, Ms. Vidovic began keeping a personal diary listing instances of harassment. *Motion*, Doc. No. 63 at 3; *Response*, Doc. No. 84-1 at 2. For instance, Ms. Vidovic claims that she was propositioned for sex by a Tampa Fire Rescue officer, and told by her captain that she would not have become pregnant had she "kept [her] knees closed." *Vidovic Affidavit*, Doc. No. 84-35, ¶¶ 3-4. In May 2011, Ms. Vidovic also received a reprimand for having a coffee cup in the rescue unit while male firefighters who did this were not reprimanded. *Response*, Doc. No. 84-1 at 3.

In April 2012, Ms. Vidovic voluntarily transferred to a new fire station so that she would have more time to study for the examination to become a driver or engineer on a

fire rig, and because a captain informed her "that he would protect [her] from being harassed" and not send her to other fire stations. *Vidovic Affidavit*, Doc. No. 84-35, ¶ 5. After the transfer, however, her new captain, Captain Shepherd, told her that she "looked good" when she sweats, that she should move slower because he "liked it slow," and told her that "no one would notice [if Ms. Vidovic and Captain Shepherd] disappeared into the woods for 20 minutes." *Id.*, ¶ 6. After speaking with Captain Susan Tamme "when [the sexual offer] was made," Ms. Vidovic reported all of Captain Shepherd's comments to the human resources department in August 2013. *Id.*

In October 2012, Captain Shepherd told Ms. Vidovic that women make less than men (1) because women take too much time off to have children, (2) you can't put male race horses against female race horses, (3) men are stronger and faster, and (4) that Tampa Fire Rescue lowered physical standards three times to hire women as firefighters. *Interrogatories*, Doc. No. 65-4 at 36. On March 28, 2013, Captain Shepherd stated that Ms. Vidovic should change shifts because she got angry too easily, and he saw the "baby side" of her come out. *Id.* He also said that other fire stations within Tampa Fire Rescue did not want to work with her because no one likes her and because she did not want to advance through the ranks of the department, lacked ambition, and had no goals. *Id.*

On April 18, 2013, Ms. Vidovic was required to attend a meeting with Captain Shepherd and a district chief, in which Captain Shepherd (1) told her that he would not give Ms. Vidovic a good evaluation, (2) made sexist statements, and (3) threatened to have the Mayor fire her. *Id.* at 37. At the request of the district chief, Ms. Vidovic wrote a memorandum on her recollections of the meeting. *Id.* After this meeting, Ms. Vidovic put

in a request to move to a different shift at Station 22 until she could begin working at a different station. *Vidovic Affidavit*, Doc. No. 84-35. ¶ 7.

In May 2013, the district chief announced that an official investigation would take place regarding the memorandum that Ms. Vidovic filed. *Id.*, ¶ 10. The memorandum itself consisted of four pages, and Ms. Vidovic acknowledged that Captain Shepherd "was a great [captain]." *Memorandum*, Doc. No. 63-30 at 1. In the memorandum, Ms. Vidovic recounted the prior discussion in which women were compared to race horses, and had lower physical requirements to qualify for service at Tampa Fire Rescue. *Id.* The final investigation report (1) found that there was no substantiation or corroboration for the allegations, (2) recommended counseling for Captain Shepherd, (3) and proposed that Captain Shepherd and Ms. Vidovic should be moved to different stations. *June 26, 2013 HR Report*, Doc. No. 69-6.

When Ms. Vidovic transferred to her new station, her new captain told her that he had received numerous warnings about her. *Interrogatories*, Doc. No. 65-4 at 37. When she eventually transferred back to Station 22, on July 26, 2013, Ms. Vidovic was forced to clean the fire station, scrub the dumpster, and perform other tasks. *Id.* at 38. Ms. Vidovic's work required her to "do more household duties than men." *Id.* at 33. In August 2013, Ms. Vidovic again met with human resources to discuss Captain Shepherd's treatment of her. *Vidovic Affidavit*, Doc. No. 84-35, ¶ 11.

Ms. Vidovic's efforts to qualify as a driver or engineer continued. Ms. Vidovic did not receive a promotion in 2014 to driver or engineer, despite her qualifications. *Motion*, Doc. No. 84-1 at 7. No women were promoted (although one was offered a promotion, but declined). *Eligibility List*, Doc. No. 69-10. Ms. Vidovic scored a 100.5 on the relevant

examination. *Id.* Two males who were promoted, John Cannon and Eric Perez, both scored a 100.4 on the relevant examination, respectively. *Id.*

In February 2015, Ms. Vidovic again took the examination to become a driver or engineer. Ms. Vidovic claimed that the examination was scored incorrectly. *Grievance*, Doc. No. 63-27. Ms. Vidovic stated that she felt that the scores needed to be recalculated, but admitted that she "grabbed the wrong gauge and moved it less than 1 inch." *Id.* Her filed grievance also questioned the wisdom of the scoring system. *Id.*

In March 2015, Ms. Vidovic became pregnant again. *Undisputed Facts*, Doc. No. 80, ¶ 4. Although Tampa Fire Rescue does not have a pregnancy policy, there is a light-duty policy that "is designed to provide an opportunity for personnel unable to perform in their normal assignments due to a line of duty injury or illness, to be productive in alternative assignments." *Light-duty Policy*, Doc. No. 63-23 at 1. The Chief of Tampa Fire Rescue, Chief Forward, testified at his deposition that there is a policy making pregnant fire fighters eligible to work on light-duty, but that they must work a regular 40-hour week, instead of staggered shifts. *Forward Deposition*, Doc. No. 69, 87:21-88:3. The Chief also testified that light-duty firefighters receive the same pay and benefits as full-duty fire fighters, and did not lose any annual leave or sick leave. *Id.*, 90:1-11.

Ms. Vidovic testified that she was forced to go on light-duty when she had her first child. *Interrogatories*, Doc. No. 65-4 at 22. Ms. Vidvoic was required to undergo a fit for duty examination, which she passed, when she became pregnant with her third child. *Kohan Depo*, Doc. No. 71, 45:16-46:2.

On April 16, 2015, Ms. Vidovic requested to go on light-duty status for her pregnancy, and that she be allowed to "maintain the schedule of 24 hours on and 48

hours off." *Pregnancy Request*, Doc. No. 63-11. She made further requests not to participate in hazardous or dangerous calls, or, in the alternative, to go to "a light[-]duty position during the day and allowed to go to the station at night" while maintaining her then-current schedule. *Id.* Ms. Vidovic's request was denied. *Forward Depo*, Doc. No. 88:5. It is uncontested that the City does not offer this type of non-line-of-duty light-duty to any fire fighter, including males and females.

On April 18, 2015, Ms. Vidovic reported to human resources that she was being harassed online by several Tampa Fire Rescue employees. *Interrogatories*, Doc. No. 64-5 at 39. Ms. Vidovic emailed human resources about the screen shot and alleged harassing comments. *Id.* On May 19, 2015, Ms. Vidovic again met with Chief Forward, and reported to him Captain Shepherd's harassment of her, and reported retaliation for reporting the conduct. *Meeting Transcript*, Doc. No. 69-28 at 2. Chief Forward emailed Ms. Vidovic that he would investigate the matters discussed by Ms. Vidovic. *Email*, Doc. No. 69-29.

Ms. Vidovic filed an EEOC discrimination charge on May 28, 2015. *EEOC Charge*, Doc. No. 69-31. Chief Forward received and saw the charge of discrimination. *Forward Depo*, Doc. No. 69-1, 135:19-20.

On June 18, 2015, Ms. Vidovic emailed Jace Kohan, the newly promoted Tampa Fire Rescue personnel chief, and directly requested the same alternative light-duty operations for her pregnancy that had already been denied by Chief Forward. *Counseling Form*, Doc. No. 67-12 at 1. The counseling form stated that Ms. Vidovic was advised on the chain of command related to her prior email to Chief Kohan. The note indicated that

"any further disregard for communication through the proper channels (chain of command) will result in further discipline." *Id.*

On June 19, 2015, Ms. Vidovic was removed from a fire control operation. *Interrogatories*, Doc. No. 65-4 at 32. Ms. Vidovic's captain-in-charge while she was fighting that fire said that she "did everything fine" but "was mentioning some chiefs and captains mentioning that [she] was pregnant." *Vidovic Depo*, Doc. No. 65, 320:20-321:24. Ms. Vidovic was also informed that the chiefs and the captains thought that she should not be working while she was pregnant. *Id.*, 321:22-24.

On July 16, 2015, Ms. Vidovic had an appointment with her midwife, Emily Hovet. *Hovet Note*, Doc. No. 65-2 at 1. On a midwife's note, Ms. Hovet stated that she could not perform the full duties of a firefighter, and should be relieved of her duties. *Id.* Tampa Fire Rescue has a policy in which:

> All off-duty, Non-Line of Duty injuries or illnesses which require the service of a physician or dentist shall require a written release from the physician, (TFR-10), stating the nature of the injury or illness and the date that the injured or ill person is able to return to duty. The (TFR-10) must be submitted to the Occupational Health Office or accompany the employee upon returning to duty.

*Doctor's Note Policy*, Doc. No. 71-5 at 1. The City asserts that the Hovet note was incorrect, and that Ms. Vidovic knew it was untrue because she wanted alternative light-duty and therefore had requested Hovet to falsely complete the TFR-10 form "stating she could not perform the duties as a firefighter in an effort to get the alternative duty status she desired." *Motion*, Doc. No. 63 at 18. Ms. Vidovic affirmed, however, that she did not ask Ms. Hovet to falsely complete the July 2015 TFR-10, and that she turned in all of her TFR-10's for all of her midwife and other medical appointments. *Vidovic Affidavit*, Doc. No. 84-35, ¶¶ 17-18.

And so the issues continued. Ms. Vidovic was disciplined for having her hair a half-inch too long below her ears, and she was required to wear different shirts not showing her tattoos. *Interrogatories*, Doc. No. 65-4 at 40, 13, 28. On August 2, 2015, Ms. Vidovic again requested to be placed on alternate duty while maintaining "the schedule of 24 hours on and 48 hours off." *Vidovic Alternate Duty Request*, Doc. No. 67-14. The request was again denied. *Interrogatories*, Doc. No. 65-4 at 40.

On August 11, 2015, Ms. Vidovic attended a meeting with the Tampa Fire Rescue personnel chief and a district chief. *Interrogatories*, Doc. No. 65-4 at 40. At that meeting, the personnel chief allegedly stated "every other woman has gone light-duty by this time [in her pregnancy] and you can't even sit down. Can you even do the job now?" *Id*. Ms. Vidovic was then ordered to produce the TFR-10 reports from her previous visits to her midwife. *Meeting Summary*, Doc. No. 71-29. Ms. Vidovic then turned in a second note from her midwife, Ms. Hovet, that stated that she was able to perform the duties of a firefighter and that she should not be relieved of her duties. *Hovet Form 8/12/15*, Doc. No. 63-15. Ms. Vidovic's later request to receive a temporary duty assignment was denied.

In early September 2015, Ms. Vidovic amended her EEOC charge to include retaliatory acts committed by Tampa Fire Rescue since the time she had filed her initial charge. *Undisputed Facts*, Doc. No. 80, ¶ 7. Ms. Vidovic was not made a senior firefighter, and was transferred to other stations.

Ms. Vidovic claims that she never turned down or failed to perform required duties when she was pregnant, and that she never avoided lifting stretchers, buckets of water, or other heavy objects. *Vidovic Affidavit*, Doc. No. 84-35, ¶ 19. Furthermore, while the

City claims that Ms. Vidovic failed to report to a fire call on October 16, 2015, Ms. Vidovic contends that her acting captain never ordered her to the scene after she had returned from a mentoring program. *Id.*, ¶ 21. When told that the fire was almost out, Ms. Vidovic informed her acting captain that she would just take sick time and go home to care for her family. *Id.* An affidavit from the acting captain, however, asserted that he ordered her to the fire, and denied her request to use leave time. *Pelaez Affidavit*, Doc. No. 77, ¶ 7.

Ms. Vidovic again on October 25, 2015, requested an alternate duty for her pregnancy and that she be allowed to maintain her schedule of 24 hours on and 48 hours off. *Vidovic Request*, Doc. No. 67-19. The request was again denied. *Interrogatories*, Doc. No. 65-4 at 32-33.

On October 31, 2015, Ms. Vidovic received an unsatisfactory performance review. The Tampa Fire Rescue officer who performed the evaluation wrote:

> Unfortunately [Firefighter] Vidovic's performance evaluation has decreased significantly from last year. [Firefighter] Vidovic on several occasions has challenged her supervisors and challenged the [Rules and Regulations] that govern conduct [at Tampa Fire Rescue]. She does not grasp the concept of congregate living. <u>[Firefighter] Vidovic appears to have no concern for the safety of herself or the safety of her unborn child as she continues to work full duty as a firefighter</u>.

*Unsatisfactory Evaluation*, Doc. No. 70-1 at 6 (emphasis added). Chief Forward countersigned and concurred with the evaluation. *Id.*

On November 6, 2015, Ms. Vidovic was required to undergo a fit for duty exam. *11/6/15 Memorandum*, Doc. No. 71-2. Ms. Vidovic passed the examination from the Tampa Fire Rescue doctor. *Jenkins Evaluation*, Doc. No. 71-4 at 1. However, on that same day, Ms. Vidovic was also directed to turn in her TFR-10 for her October medical appointments. *11/6/15 Memorandum*, Doc. No. 71-2. While the City stated that Ms. Vidovic told Tampa Fire Rescue officials that the appointments were cancelled, but that

she had actually attended them, Ms. Vidovic claims that she had turned in all of the necessary paperwork. *Vidovic Affidavit*, Doc. No. 84-35, ¶ (stating that she "turned in a TFR-10 for [her] October 2015 appointment with [her] midwife" and that she "never said that appointment had been cancelled.").

The City claims that Ms. Vidovic lied about her October 21, 2015 midwife appointment. *Motion*, Doc. No. 25 at 25. The City then began an investigation into the alleged untruthful statements made by Ms. Vidovic. *Kohan Deposition*, 68:11-69:1. On December 4, 2015, Ms. Vidovic went out on leave to have and care for her new child. *Vidovic Affidavit*, Doc. No. 84-35, ¶ 27. She returned to work on March 12, 2016. *Id.*, ¶ 28.

On December 8, 2015, Ms. Vidovic sent a draft of a complaint to the Defendant. *Interrogatories*, Doc. No. 65-4 at 31. When Ms. Vidovic returned to work, she was assigned to a busier station. *Id.* On March 23, 2016, Ms. Vidovic initiated this lawsuit by the filing of a complaint. *Complaint*, Doc. No. 1. On March 24, 2016, Ms. Vidovic was terminated from Tampa Fire Rescue for alleged incidents of untruthfulness. *Motion*, Doc. No. 63 at 28. Although she denies the untruthfulness, Ms. Vidovic also claims that there were male comparators who were not fired for untruthfulness.

## IV.    Title VII Gender Discrimination

Title VII, in part, prohibits employers from discharging any individual "or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Generally, to establish a Title VII claim for sex discrimination in a circumstantial evidence case, Ms. Vidovic must prove that she was "(1) a member of the protected class; (2) qualified for the position; (3) subjected to adverse

employment action; and (4) replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class." *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).

If Ms. Vidovic establishes a prima facie case, she is entitled to the presumption that the employer discriminated against her on the basis of the asserted protected characteristic—in this case her gender. *Flowers v. Troup Cty., Ga., Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). The burden then shifts to the City to produce a legitimate, non-discriminatory reason for the adverse action taken against her. *Id.* The Court should not assess the credibility of the employer's proffered reason for taking action. *Id.* Once the legitimate, non-discriminatory reason is advanced, the prima facie case is rebutted, and all presumptions drop from the case. *Id.* Having framed the issue, the parties next litigate whether the employer's legitimate, non-discriminatory reason for its action is pretextual. *Id.* At all times, Ms. Vidovic retains the ultimate burden of persuading the Court that she has been the victim of intentional discrimination. *Id.*

This is a circumstantial evidence case. *See Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. App'x. 883 (11th Cir. 2016) (unreported) (stating that only the most blatant remarks, whose intent could mean nothing other than to discriminate based on an impermissible factor constitute direct evidence of discrimination). The parties both concur that the Court should apply the *McDonnell-Douglas* burden shifting analysis to this case. *Compare Motion*, Doc. No. 63 at 29; *Response*, Doc. No. 84 at 1 (although advocating for an additional alternate analysis permitting the Court to permit this case to proceed to the trier of fact).

## A. Protected Class and Qualification

With this initial analysis in mind, the Court must first determine whether Ms. Vidovic has established a prima facie case of gender discrimination under the *McDonnell-Douglas* framework. As a woman, Ms. Vidovic is a member of a Title VII-protected class. *See* 42 U.S.C. § 2000e-2(a)(1). It further appears from the record that Ms. Vidovic has adduced sufficient evidence to demonstrate that she was qualified for the position that she held at the fire department. See *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010) (recognizing that a plaintiff was presumably qualified for the job based on the fact that her employer hired her for the position). Ms. Vidovic served as a firefighter at Tampa Fire Rescue November 17, 2008 until the time of her termination. *Vidovic Depo*, Doc. No. 64, 84:5-9. While there are certainly numerous accusations of unprofessionalism and other performance issues, *See gen. Motion*, Doc. No. 63 at 1-29, there is sufficient evidence to demonstrate that Ms. Vidovic was qualified for her position as a firefighter. The City's Motion does not argue otherwise.

## B. Adverse Employment Actions

Ms. Vidovic argues that she was subjected to numerous adverse employment actions because of her sex, including: (1) termination, (2) denial of promotion, (3) receipt of a poor performance evaluation that made her ineligible for a pay increase, (4) transfer, (5) denial of opportunities to relief drive, (6) jerrying[2] her to other stations, (7) transfer to another station making it difficult to get to work, (9) denial of her requests for alternate duty status and assignment to the vent truck while pregnant, (10) receipt of disciplinary

---

[2] Jerrying is a term of art at Tampa Fire Rescue for when a firefighter must leave her assigned station to go to another station on a temporary basis. *Motion*, Doc. No. 63 at 15.

write-ups and forcing her to undergo a fit for duty test, (11) denial of her requested light-duty assignment, (12) transfer to a new station where she could not pump breast milk, and (13) refusal to reinstate her. *Response*, Doc. No. 84 at 4. As explained below, however, not every one of Ms. Vidovic's grievances amounts to an adverse employment action.

Our appellate court has explained in a recently published decision that an adverse employment action is a serious and material change in the terms, conditions, or privileges of employment. *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013). Not all employer actions that negatively impact an employee, or are merely inconvenient, qualify as adverse employment actions. *Cheatham v. DeKalb Cty., Georgia*, 682 F. App'x 881, 889 (11th Cir. 2017) (unreported). "Written criticisms of an employee's job performance that do not lead to tangible job consequences, however, are generally not sufficient to constitute an adverse employment action." *Id.* A transfer to a different position, on the other hand, can be an adverse employment action if it involves a reduction in pay, prestige or responsibility. *Hinson v. Clinch Cty., Georgia Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000). When reviewing Ms. Vidovic's posited adverse employment actions in the summary judgment context, the Court must employ an objective test, and ask whether a reasonable person in her position "would view the employment action in question as adverse." *Id.* (internal quote omitted). Title VII does not require proof of direct economic consequences in all cases. *Holland v. Gee*, 677 F.3d 1047, 1058 (11th Cir. 2012).

Clearly, Ms. Vidovic suffered an adverse employment action when she was fired. *See Padron v. BellSouth Telecommunications, Inc.*, 196 F. Supp. 2d 1250, 1256 (S.D. Fla. 2002), *aff'd*, 62 F. App'x 317 (11th Cir. 2003) (accepting the parties' stipulation that

an employee's termination amounted to an adverse employment action). Ms. Vidovic's claim that she was denied a promotion to a driver or engineer also withstands the City's attack. *See Gary v. Hale*, 212 F. App'x 952, 957 (11th Cir. 2007) (holding that the repeated denial of job promotion, "despite seemingly qualified for the position sought, constitutes an adverse employment action for purposes of Title VII."). Additionally, Ms. Vidovic's October 2015 performance review, which rated her work unsatisfactorily and made her ineligible for a pay increase, is properly considered an adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 971 (11th Cir. 2008) (affirming, albeit in a Title VII-retaliation claim context, the "holding that a poor performance evaluation that directly results in the denial of a pay raise of any significance clearly affects an employee's compensation and thus constitutes an adverse employment action under Title VII.").

The remaining purported adverse employment actions are a closer call. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). As the *Davis* panel explained, the Eleventh Circuit has not adopted a bright-line and rigid test for what constitutes an adverse employment action. *Id.* But the Court is not left without guidance. There must be a threshold level for the adverse action, and not every unkind act violates Title VII. *Id. at* 1238-39. The Court is of the opinion that Tampa Fire Rescue's decision to deny Ms. Vidovic the opportunity to relief drive, send her to other stations on occasions, transfer her to another station, deny her requests for a light-duty schedule that had never been implemented before when she was pregnant, and require her to undergo a fit for duty examination, as well as the other complained of conduct not previously found to have been adverse employment actions, are not adverse employment actions. These changes in work assignments, as recounted by the record evidence, are not so substantial to have

substantially and materially altered the terms, conditions, or privileges of Ms. Vidovic's employment. *See id.* at 1244.

## C. Comparators

The City's strongest offensive against Ms. Vidovic's quest for a jury trial on her Title VII discrimination claim rests with its argument that she cannot demonstrate the fourth element of her prima facie case: that she was replaced by a person outside the protected class or suffered from disparate treatment because of membership in the protected class. *Veneman*, 313 F.3d at 1275. Specifically, the City argues that Ms. Vidovic cannot demonstrate (1) that any males charged with untruthfulness under relevant municipal regulations were treated more favorably, or (2) that Ms. Vidovic was replaced by a female. *Motion*, Doc. No. 63 at 31.

Ms. Vidovic, unsurprisingly, disagrees with the City on this point. She states in her Response Memorandum that "Plaintiff has shown that male firefighters who were untruthful were not terminated." *Response Memorandum*, Doc. No. 84. In support of her claim, Ms. Vidovic cites to the deposition of Kimberly Marple, an employee at the City of Tampa Human Resources Division. *Marple Depo*, Doc. No. 72. Ms. Marple testified that an employee named Dwanue Johnson, a Tampa Fire Rescue employee, received a disciplinary action in 2015 and 2016. *Id.*, 144:1-21. The referenced exhibit demonstrated that Firefighter Johnson violated Tampa Fire Rescue Rules and Regulations 102.01 (employees conducting themselves in a manner so as not to bring discredit to the good name or reputation of the fire department or City), 102.01(6) (employees shall not display acts of misconduct, neglect of duty, conduct unbecoming a firefighter or officer), and general insubordination. *Johnson Reprimand*, Doc. No. 72-43 at 1-2. Firefighter Johnson was not terminated from employment, and received a written reprimand. *Id.*

Ms. Marple also testified that a firefighter, Milton Jenkins, was not terminated from the Tampa Police Department. *Marple Depo.*, Doc. No. 72, 149:1-6. Mr. Jenkins was a fire investigator, who did not report that he was missing a service-issued firearm. *Jenkins Reprimand*, Doc. No. 72-47 at 1. Mr. Jenkins was found to have violated provisions of the City personnel manual, including the general prohibition against incompetence, inability to perform up to accepted work standards, failure to maintain licensing requirements, and causing damage or loss of public property through negligence or willful misconduct. *Id.* Although Mr. Jenkins remained with the Tampa Police Department, he was terminated from the Tampa Police Department Reserve Force. *Id.* at 2.

Ms. Vidovic also cited to a disciplinary incident involving William Paz. *Paz Discipline*, Doc. No. 84-24. Captain Paz, who worked at Tampa Fire Rescue, was disciplined for filing inaccurate reports. *Id.* He was charged with multiple violations of the Tampa Fire Rescue's code of conduct, including that employees shall not knowingly make a false official report. *Id.* Captain Paz was permitted to retire. *Id.* Nonetheless, his employment ended as a result of his conduct.

Under a prior fire chief, another firefighter named Walter Spradlin in 2005 filed a false accident report. *Spradlin Discipline*, Doc. No. 72-45 at 1. Mr. Spradlin, at the time of Ms. Marple's deposition, was still employed by Tampa Fire Rescue and is now a captain. *Marple Depo*, Doc. No. 72, 146:4-25. However, Mr. Spradlin was charged under a different offense than Ms. Vidovic. *Spradlin Discipline*, Doc. No. 72-45 at 1.

Furthermore, Ms. Vidovic cites to the case of four firefighters named Michael Campbell, Michael Berwald, Michael Layton, and Stephen Johnson. Firefighter Campbell received discipline in 2004 for taking photographs of women that included partial and full

nudity at a fire station. *Campbell Discipline*, Doc. No. 72-46 at 1. He was charged with insubordination, neglect of duty, and moral turpitude. *Id.* Firefighter Campbell was reassigned to another station. *Id.*

Ms. Vidovic received a notice of disciplinary action on March 24, 2016. *Vidovic Discipline*, Doc. No. 65-1 at 1. The disciplinary notice stated that on Friday, November 6, 2015, Ms. Vidovic attended a meeting with several Tampa Fire Rescue officers and others, in which Ms. Vidovic was accused of saying that she canceled a doctor's appointment for October, and did not have a necessary form for that month. *Id.* However, subsequent phone calls made by the department indicated that Ms. Vidovic had been to her medical provider on October 21, 2015, which was contrary to her previous statement. *Id.* The department determined that Ms. Vidovic was deliberately untruthful, and violated provision B28.2A(3)(d)(1) of the City of Tampa Personnel Manual. *Id.* Specifically, Ms. Vidovic was accused of engaging in acts of moral turpitude, including (1) falsification, (2) misrepresentation, or (3) material omission of statements, testimony, or any document or record completed in the course of employment. *Id.* Ms. Vidovic was dismissed from employment on March 24, 2016. *Id.*

Ms. Vidovic has not established sufficient comparators to create a prima facie case. "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). The most important factors in the disciplinary context are the nature of the offenses and the corresponding imposed punishments. *Id.* The quantity and quality of the comparator's misconduct must

be nearly identical to prevent courts from second-guessing an employer's reasonable business decision. *Id.* Title VII does not take away an employer's right to interpret its rules as it chooses, and make determinations as it sees fit under those rules. *Id.* at 1369.

Although Ms. Vidovic denies any alleged misconduct, the compared misconduct is not sufficiently close to establish that she was disparately treated when she was terminated. None of the offending male counterparts engaged in comparable acts of moral turpitude. While these City employees were disciplined for negligence, poor decision-making, and shocking indifference to professional behavior, none of them were accused of having lied to senior departmental supervisors and officers.[3] They are not comparators. Ms. Vidovic cannot establish a prima facie case under the *McDonnell-Douglas* framework.

Before moving on from Ms. Vidovic's discrimination claim, the Court addresses her reliance on *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011). In *Smith*, our appellate court instructed that a factual record based on a convincing mosaic of circumstantial evidence sufficient to permit a jury to infer intentional discrimination by a decision maker would permit the plaintiff to survive a motion for summary judgment. *Id.* at 1328.

Ms. Vidovic's briefing, somewhat frustratingly, incorporates by reference her entire Statement of Disputed Facts, in an effort to meet her burden under the *Smith* case. *Response*, Doc. No. 84 at 2 n. 2. The Court has nonetheless reviewed the record evidence thoroughly, and finds that there is a sufficient factual record evincing a

---

[3] Importantly, Captain Paz was required to resign. Accordingly, the impact of the disciplinary actions are equivalent, and do not serve as a basis to find that they were comparators.

convincing mosaic of circumstantial evidence that would permit a jury to find that she was intentionally discriminated against based on a protected characteristic. In the light most favorable to her, Ms. Vidovic adduced the facts from which a reasonable jury could infer that she suffered discriminatory adverse employment actions because of her gender.

For example, on June 19, 2015, a district chief removed Ms. Vidovic from her fire-fighting responsibilities in response to a call after she had been on the scene, working the fire for some time. *See Interrogatories*, Doc. No. 65-4 at 32 (stating "pulling me off a fire when I was told I had done everything correctly."); *Vidovic Depo*. Doc. No. 65, 317:1-24. After the fire, Ms. Vidovic was informed that some chiefs and captains indicated that Ms. Vidovic should not be working while she was pregnant. *Vidovic Depo*, Doc. No. 65, 321:1-24 testifying "that the chiefs and the captains thought that I shouldn't be working while I was pregnant.").

On August 11, 2015, Ms. Vidovic attended a meeting with the Tampa Fire Rescue personnel chief and a district chief. *Interrogatories*, Doc. No. 65-4 at 40. At that meeting, the personnel chief allegedly stated "every other woman has gone light-duty by this time [in her pregnancy] and you can't even sit down. Can you even do the job now?" *Id.*

On October 31, 2015, Ms. Vidovic received an unsatisfactory annual review. *Performance Evaluation*, Doc. No. 70-1. The review stated the following:

> Unfortunately [Firefighter] Vidovic's performance evaluation has decreased significantly from last year. [Firefighter] Vidovic on several occasions has challenged her supervisors and challenged the [Rules and Regulations] that govern conduct [at Tampa Fire Rescue]. She does not grasp the concept of congregate living. [Firefighter] Vidovic appears to have no concern for the safety of herself or the safety of her unborn child as she continues to work full duty as a firefighter.

*Id.* at 1 (emphasis added). A discussion of this evaluation indicated that Chief Bogush and Captain Gillen did not agree with Ms. Vidovic serving as an active firefighter while

she was pregnant, and that was why she was marked down on her evaluation. *Interrogatories*, Doc. No. 65-4 at 30. This negative performance review made Ms. Vidovic ineligible for a pay increase. Even after she returned from maternity leave, Ms. Vidovic was transferred to another, busier fire station for as long as she pumped breast milk. *Interrogatories*, Doc. No. 64-5 at 31.

Furthermore, there is sufficient record evidence in the record tending to show that the City's posited reason for terminating Ms. Vidovic, that she submitted a false statement to senior fire fighter officials, is not true. *Vidovic Affidavit*, Doc. No. 84-35, ¶ (stating that she "turned in a TFR-10 for [her] October 2015 appointment with [her] midwife" and that she "never said that appointment had been cancelled.").

This is a fact-intensive case, but it is one in which a reasonable jury could find that Ms. Vidovic suffered the above adverse employment actions because of her gender. Therefore, the Court denies the City's Motion for Ms. Vidovic's gender discrimination claim.

## V.    Title VII Retaliation Claim

Title VII forbids employers from retaliating against employees because they opposed an unlawful employment practice. *Mealing v. Ga. Dept. of Juvenile Justice,* 564 Fed. App'x 421, 427 (11th Cir. 2014) (unreported). The anti-retaliation provision of Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a); s*ee also Ellison v. City of Birmingham*, 180 F. Supp. 3d 1028, 1033 (N.D. Ala. 2016). To establish a prima facie retaliation case, the plaintiff must show "(1) [s]he engaged in a statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) there was a causal link between the protected activity and the adverse action." *Smith v. City of Greensboro*, 647 F. App'x 976, 983 (11th Cir. 2016) (unreported). A plaintiff is not required to prove the underlying claim for discrimination if they possessed a reasonable good faith belief that the discrimination existed. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994). The Court construes the causal link elements broadly. *Id*. A plaintiff must merely prove that the protected activity and the negative employment action are not wholly unrelated. *Id*. To prove causation, the plaintiff must "show that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id*. Plaintiffs must also establish that their protected activity was a but-for cause of the adverse employment decision. *Mealing*, 564 Fed. App'x at 426-27 *relying on Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S.Ct. 2517, 2534 (2013).

Like the Title VII discrimination analysis, once the plaintiff establishes a prima facie retaliation case, the burden of production shifts to the defendant to rebut the presumption by "articulating a legitimate, non-discriminatory reason for the adverse employment action." *Mealing*, 564 Fed. App'x at 427. If the defendant is able to carry this burden, the plaintiff must then demonstrate that the legitimate reasons offered by the employer for undertaking the adverse employment action were pretextual. *Id*.

In establishing pretext, a plaintiff must demonstrate that the proffered reason was not the true reason for the adverse employment action. *Id*. If more than one legitimate and non-discriminatory reason is advanced by the employer, the employer must rebut

each reason. *Id.* The Court should consider reasons pretextual only if "(1) the reasons were false and (2) retaliation was the real reason for the employment decision." *Id.*

## A. Statutorily Protected Activity

When determining whether Ms. Vidovic engaged in statutorily-protected, activity, the Court must consider two clauses contained in the relevant Title VII anti-retaliation provision. *See Wheatfall v. Bd. of Regents of Univ. Sys. of Georgia*, 9 F. Supp. 3d 1342, 1353 (N.D. Ga. 2014) (stating that anti-retaliation provision only applies when plaintiff engaged in protected activity within the meaning of the participation or opposition clause). Under Title VII's opposition clause, an employer cannot retaliate against an employee because she opposed any unlawful practice under the statute. *McShane v. U.S. Attorney Gen.*, 144 F. App'x 779, 782 n. 2 (11th Cir. 2005). If the plaintiff relies on the opposition clause, complaints are not protected activity unless they satisfy two requirements. *Wheatfall*, 9 F. Supp. At 1353.

First, "a complaint about an employment practice constitutes protected opposition only if the individual explicitly or implicitly communicates a belief that the practice constitutes unlawful employment discrimination." *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010). Second, the complaint must be based on a good faith, reasonable belief that the employer was engaged in unlawful employment practices. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997). To satisfy this point, the plaintiff must show that she subjectively believed, in good faith, that their employers engaged in unlawful employment practices and that the belief was objectively reasonable in light of the facts and record presented. *Id.* Similarly, the participation clause proscribes employers from retaliating against employees if they made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statute. *McShane*, 144 F. App'x at 782 n. 2.

Through her Response, Ms. Vidovic asserts that there is record evidence tending to show that she engaged in the following nine instances of protected activity: (1) complaining to the City's human resources department about a hostile work environment, (2) reporting harassment and retaliation to the fire chief, (3) filing a discrimination charge with the EEOC, (4) reporting instances of harassment to her captain, (5) filing an amended charge of discrimination, (6) telling a personnel chief that it was pregnancy discrimination to make her undergo a fit for duty case, (7) providing a draft of the complaint to the City, (8) reporting to human resources that Bogush continued to harass her, (9) and filing a complaint with this Court. *Response*, Doc. No. 84 at 10. Clearly, the filing of the discrimination charges constituted protected activity under the participation clause. Furthermore, evidence tends to show that many of Ms. Vidovic's other actions, including notifying superior officers within Tampa Fire Rescue that Title VII-prohibited activity was occurring, constituted protected activity. Accordingly, the Court finds that Ms. Vidovic has met the first element of her prima facie case of retaliation.

## B. Adverse Employment Actions

Through her response, Ms. Vidovic argues that she suffered adverse employment actions because of her protected activities. Specifically, she asserts that she (1) received a poor performance evaluation that denied her a pay raise, (2) was rejected for a promotion, and (3) was terminated from employment. *Response*, Doc. No. 84 at 8. As the Court explained in its analysis on Ms. Vidovic's Title-VII gender discrimination claim, these are adverse employment actions.

## C.    Causation

Even under the *Nassar* but-for standard, Ms. Vidovic is able to establish the causation prong of her prima facie case of retaliation. *See Smith v. City of Fort Pierce, Fla.*, 565 F. App'x 774, 778 (11th Cir. 2014) (unreported) (conducting the but-for causation analysis when determining whether plaintiff advanced a prima facie case); *see also Banks v. iGov Techs., Inc.*, 661 Fed. App'x. 638, 645 (11th Cir. 2016) (stating in unpublished opinion that the causation element of prima facie case must include showing of but-for causation). The Court's review of the record evidence reveals the following timeline:

| Date | Event | Record Authority |
|------|-------|------------------|
| February 2015 | Ms. Vidovic was not promoted to driver or engineer. | *Response*, Doc. No. 84-1 at 8. |
| 5/28/15 | Ms. Vidovic filed an EEOC discrimination charge. Chief Forward received and saw the charge of discrimination. *Forward Depo*, Doc. No. 69-1, 135:19-20. | *EEOC Charge*, Doc. No. 69-31; *Forward Depo*, Doc. No. 69-1, 135:19-20. |
| September 2015 | Ms. Vidovic filed an amended EEOC charge. Senior Tampa Fire Rescue personnel knew of the amended charge. | *Undisputed Facts*, Doc. No. 80, ¶ 7; *Crum Depo*, Doc. No. 68,, 40:17-25. |
| 9/25/15 | Ms. Vidovic was not promoted to Driver Engineer. | *Interrogatories*, Doc. No. 65-4 at 22. |
| 10/31/15 | Ms. Vidovic received an unsatisfactory performance review criticizing her for having no concern for the safety of her unborn child. | *Unsatisfactory Evaluation*, Doc. No. 70-1 at 6 |
| 12/8/15 | On December 8, 2015, Ms. Vidovic sent a draft of a complaint delineating the charges of sexual harassment and discrimination to the City. Senior Tampa Fire Rescue personnel were aware of this complaint. | *Interrogatories*, Doc. No. 65-4 at 31; *Kohan Depo*, Doc. No. 71, 88:4-24. |
| 3/23/16 | Ms. Vidovic initiated the lawsuit by filing the complaint in this Court. | *Complaint*, Doc. No. 1 |
| 3/24/16 | The City terminated Ms. Vidovic from Tampa Fire Rescue for alleged untruthfulness. | *Motion*, Doc. No. 63 at 28. |

"The burden of causation can be met by showing close temporal proximity between the statutorily protected activity and the adverse action." *Adams v. City of Montgomery*, 569 F. App'x 769, 773 (11th Cir. 2014) (stating the standard for causation in a post-*Nassar* context). Closeness in time "between the protected activity and the adverse employment action may be sufficient to create an inference of causation," and "gaps of time, standing alone, do not preclude a plaintiff from producing enough evidence for a reasonable jury to conclude that [the protected activity] was a substantial factor in the [adverse employment decision]." *Robinson v. LaFarge N. Am., Inc.*, 240 F. App'x 824, 828 (11th Cir. 2007) (unreported) (internal quotes omitted). In *Robinson*, the appellate court noted that the plaintiff in that case was able to demonstrate the causation element when the adverse employment action "occurred only about two months after he filed a grievance." *Id.*

The Court is of the opinion that Ms. Vidovic has established that, based on the timeline of events, that she can meet the but-for and other causation requirements and thus complete her prima facie case of retaliation. For example, Ms. Vidovic was not promoted to Driver Engineer very soon after she had amended her EEOC charge, and the very next month Ms. Vidovic received an unsatisfactory performance review that made her ineligible for a raise. Furthermore, the very day after she filed a complaint in this court, Ms. Vidovic was terminated from her position with Tampa Fire Rescue. Taking the factual inferences in the light most favorable to Ms. Vidovic, she has crossed the *Nassar* threshold, and proven the causation element for her retaliation claim.

## D. Pretext

Nonetheless, the City has submitted facially non-retaliatory reasons for having taken the actions against Ms. Vidovic. For example, the City argues that it identified legitimate concerns with the Plaintiffs' actions that caused her to receive an unsatisfactory performance review, and the City claims that she did not receive a promotion because she did not score satisfactorily on the exam for promotion. *Motion*, Doc. No. 63 at 33. Furthermore, the City posits that Ms. Vidovic was fired for untruthfulness, and not as a retaliatory action for engaging in protected conduct. The Court accepts these reasons as non-discriminatory, and finds that the City has met its relatively light burden of rebutting Ms. Vidovic's prima facie case.

Now comes the tough part for Ms. Vidovic. She must meet the City's reasoning head-on and demonstrate that the City's proffered reasons are merely pretext for retaliatory employment actions. *King v. Sec'y, US Dep't of the Army*, 652 F. App'x 845, 847 (11th Cir. 2016) (unreported) (analyzing the Title VII retaliation claim of a member of the military who went absent without leave whose only evidence of pretext was the closeness in time). Merely quarreling with the wisdom of the decision or demonstrating that the decision was based on erroneous facts is insufficient to demonstrate pretext. *Id.* While close temporal proximity "between the protected action and adverse employment action is evidence of pretext, it is not necessarily sufficient alone to establish pretext". *Id.*

Ms. Vidovic can demonstrate that a work-rule violation may be pretextual if she can proffer sufficient evidence that she did not actually violate the rule. *Id.* Irrespective, "[a]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct." *Id.*, *citing Damon v. Fleming Supermarkets Of Florida*, 196 F.3d 1354, 1363 (11th Cir. 1999). Whether an

employment decision was prudent or fair is irrelevant. *Id.* Ultimately, a plaintiff must show

that his protected activity was a but-for cause of the alleged adverse employment action.[4]

*Id.*

In her response, Ms. Vidovic submits the following evidence of pretext for

retaliation: (1) she filed two harassment complaint and filed the lawsuit less than one week

before she was fired, (2) she failed to have the opportunity to "tell her side of the story at

the so-called March 24, 2016 pre-disciplinary hearing as required by [the City's] policies,

(3) Chief Forward could not explain why Ms. Vidovic was terminated from her position,

and (4) Ms. Vidovic was not fired when she was untruthful on two prior occasions.

*Response*, Doc. No. 84 at 9. Although not specifically mentioned in the Response brief,

she also identifies other evidence of retaliation in her statement of disputed facts.

*Response*, Doc. No. 84-1 at 21. As explained above, the closeness in time between Ms.

Vidovic's protected activity (namely, filing this lawsuit and lodging official complaints with

Tampa Fire Rescue and the EEOC) and the date on which she was terminated may be

evidence of pretext. *King,* 652 F. App'x at 847. But that alone is likely not enough. Thus,

the Court must look to the other record evidence to determine if she has rebutted the

City's proffered reasons.

Ms. Vidovic also claims that she did not have a chance to tell her side of the story

at the March 24, 2016 pre-disciplinary hearing. However, Ms. Vidovic in her Response

clearly states that she was afforded the opportunity to speak about the reasons for her

---

[4] The Eleventh Circuit cases are somewhat unclear on when the Court should engage in the but-for causation analysis. *King* stands for the proposition that the but-for analysis should occur after the prima facie case analysis. However, other unreported cases, as explained above, concur that it should be included in that section of the *McDonnell-Douglas* framework.

termination. *Response*, Doc. No. 84-1 at 23 (stating that the pre-disciplinary hearing that Ms. Vidovic "told Kohan for the October 21, 2015 appointment but would be happy to get another one for him and he rejected the offer."). The Court does not see how this can serve as a basis for finding evidence of retaliation or for rebutting any of the City's reasons for having undertaken the adverse employment action.

Ms. Vidovic also asserts that Chief Forward was not able to clearly articulate his reasons for terminating Ms. Vidovic. *Response*, Doc. No. 63 at 33. The cited deposition testimony from Chief Forward, however, states the following:

> Q: Why was she terminated?
>
> A. After the disciplinary actions, and you'd have to look at that and see what specifically she was terminated on. I'm sure she's got a copy on that.
>
> Q: I'm sorry?
>
> A. Whatever the findings of her disciplinary actions were, that would tell you or speak to why she was terminated. It would speak to it specifically.
>
> A. So you can't tell me without looking at that?
>
> Q: No. I don't know what—all the encompassing things. I know she was – the finding that she had—she had—she was in—she had made a terminatable offence.
>
> Q: And you were the one who decided to terminate her; right?
>
> A: Based on the findings.

*Forward Depo*, Doc. No. 69-1, 167:5-20. However, on the very next page of the deposition, Chief Forward testified that the reasoning of the decision was based on Ms. Vidovic's alleged untruthfulness. *Id.*, 168:14-20. A fair reading of the deposition does not demonstrate that the City has failed to articulate that the reasons offered by the City have failed to demonstrate a failure to articulate clearly why Ms. Vidovic was terminated. This is not a fair inference to draw from the record.

Furthermore, Ms. Vidovic cites to Chief Kohan's testimony in support of her proposition that "Kohan testified [Ms. Vidovic was fired] because [Ms. Vidovic] was untruthful to him by (allegedly) saying that her October 21, 2015 doctor's (midwife) appointment was cancelled when it was not." *Response*, Doc. No. 84-1 at 22. However, that is precisely what he testified to:

> Q:. . . How was it determined that or how was it concluded that Tanja Vidovic was deliberately untruthful?
>
> A: Because I asked her about her paperwork for October, her --- her doctor's appointment for October, the TFR-10. And she said that meeting had been cancelled when indeed it wasn't cancelled and she attended the doctor."

*Kohan Depo*, Doc. No. 71, 184:6-11. Ms. Vidovic nonetheless states that these statements were different than the reasons stated on her termination notice. *Notice of Disciplinary Action*, Doc. No. 71-16 at 1. But they were not. That notice stated that "it is determined that you were deliberately untruthful to the Personnel Chief and meeting attendees about your TFR-10 paperwork." *Id.* Even taking all inferences in favor of Ms. Vidovic, the Court cannot say that the alleged inconsistencies in the evidence support her efforts to show pretext for retaliation.

The Court addresses Ms. Vidovic's most interesting effort to save her retaliation claim from the City's summary judgment motion. Ms. Vidovic claims that she can show retaliation because, according to the City, Ms. Vidovic was untruthful two other times and was not fired. As Ms. Vidovic affirms in her affidavit, on June 24, 2011, she "was written up by [her] captain for being untruthful to an officer (which [she] den[ies] [she] was). . . . [She] was not terminated for this. *Vidovic Affidavit*, Doc. No. 84-35, ¶ 30. Ms. Vidovic attached to her affidavit the formal reprimand. *See Tampa Fire Department Counseling Form*, Doc. No. 84-35 at 6. The basis of the discipline was Ms. Vidovic's untruthful

statements to an officer concerning an annual leave request. *Id.* This discipline occurred before Ms. Vidovic ever submitted a formal complaint regarding alleged Title VII violations.

Ms. Vidovic asks the Court to draw an inference from her lack of discipline in 2011 that the reason she was terminated in 2016—untruthfulness—was because she had engaged in protected activity under Title VII. According to Ms. Vidovic's logic, her alleged lack of candor in 2011 was substantively of the same character as her alleged lack of candor regarding her alleged failure to submit a TFR-10. Thus, following the syllogistic train, the Court must credit the fact that she was discharged in 2016 based on retaliation for having engaged in protected conduct. However, Ms. Vidovic does not cite any record evidence tending to show that Chief Kohan, Chief Forward, or any other senior management official with Tampa Fire Rescue was aware that Ms. Vidovic had allegedly lied about her annual leave in 2011.

But juxtaposed to this event is an event that occurred in August 2015, in which Ms. Vidovic was also alleged to have been untruthful to Chief Kohan regarding a score sheet for her promotional examination. *Response*, Doc. No. 84-1 at 23; Doc. No. 71-17. Yet at the same time, Ms. Vidovic cites to record evidence tending to show that Tampa Fire Rescue was not actually able to confirm that she was untruthful regarding her obtaining a score sheet. *Kohan Depo*, Doc. No. 71, 189:7-18. Importantly, testimony was also elicited that "every single person" that Chief Kohan was "aware of who lied about anything" was fired. *Id.*, 189:4-6.

The Court concludes that Ms. Vidovic is not entitled to any inference in her favor based on these last points. First, Ms. Vidovic cannot show that the decision makers, most

notably Chief Kohan and Chief Forward, were aware that Ms. Vidovic allegedly lied in 2011 about her annual leave. Furthermore, the 2015 incident resulted in Tampa Fire Rescue not being able to verify that she actually engaged in conduct of untruthfulness.

Not all is lost for Ms. Vidovic's retaliation claim, though. Throughout the volumes of evidence, Ms. Vidovic found a memo, dated December 17, 2015, in which Ms. Vidovic's name was listed next to the words "discipline" and "lawsuit." *Agenda Meeting*, Doc. No. 71-1 at 23. In reference to this document, Chief Kohan had been informed that a lawsuit was forthcoming from Ms. Vidovic, and he conveyed this information to Chief Forward. *Kohan Depo.*, Doc. No. 71, 88: 20-24. Although by no means is this the prototypical smoking gun (it certainly does not scream "the City fired Tanja Vidovic because she engaged in protected activity under Title VII!"), there are several inferences that can be drawn from this document.

First, it shows that the key decision makers in this case were aware of Ms. Vidovic's protected activity. Second, the inference could be derived that Ms. Vidovic's lawsuit was the basis for discipline based on the category it was placed under on the meeting agenda, namely "discipline". Third, this meeting came during Ms. Vidovic's maternity leave period, before she returned to work. Once she returned to work, she was transferred to another, busier station. This plausibly implies through fair inference that a jury could conclude that the City engaged in retaliatory conduct for Ms. Vidovic having engaged in protected activity.

When these inferences are coupled with the evidence from the temporal proximity between the protected activities and the adverse employment actions, the Court is of the opinion that a jury could fairly find for Ms. Vidovic on her retaliation claim. These are

issues of fact for a jury to decide, and disposition of this count is not appropriate for summary judgment.

Accordingly, Ms. Vidovic's retaliation claim may proceed to the jury.

## VI.     Sexual Harassment and Hostile Work Environment

To establish a hostile work environment claim under Title VII, Ms. Vidovic must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith v. City of New Smyrna Beach*, 588 F. App'x 965, 978 (11th Cir. 2014) (unreported).   The Eleventh Circuit has established well-settled elements for hostile work environment claims.   *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).   To prevail, Ms. Vidovic must show (1) that she belongs to a protected group, (2) has been subject to unwelcome sexual harassment, including sexual advances, requests for sexual favors, and other conduct of a sexual nature, (3) the harassment was based on her sex, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment, and (5) a basis for holding the employer liable.   *Id.*   The Court does not determine workplace conduct in isolation, and instead reviews the evidence of harassment both cumulatively and under the totality of the circumstances.   *Id.*

Ms. Vidovic must also prove that the environment was both subjectively and objectively hostile.   *Id.* at 809.   She must show that she subjectively perceived the harassment as sufficiently severe and pervasive to alter the terms or conditions of her employment, and must also show that the subjective perception was objectively reasonable.   *Id.*   If the environment would reasonably be perceived, and is perceived, as

hostile or abusive, there is no need for it also to cause psychological injury. *Id.* The Court must determine the objective prong of this step from the perspective of a reasonable person in Ms. Vidovic's position, and consider all of the circumstances surrounding the case. *Id.* To consider this point, the Court considers the following four factors: "(1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance." *Hyde v. K.B. Home, Inc.*, 355 F.App'x 266, 271 (11th Cir. 2009).

A bedrock principle of our Circuit's hostile work environment claim is that "not all objectionable conduct or language amounts to discrimination under Title VII." *Id*; *see also Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016) (instructing that only conduct that is based on a protected category may be considered in a hostile work environment analysis and that boorish statements that are not related to the gender of the plaintiff are not counted). Gender-specific language that "imposes a change in the terms or conditions of employment based on sex will violate Title VII," while generalized vulgarity or sexual references will not serve as actionable offenses for a hostile workplace claim. *Reeves*, 594 F.3d at 809.

Title VII's test is whether members of one sex "are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* (internal quote omitted). However, a member of a protected group cannot be forced to endure "pervasive, derogatory conduct and references" that are gender-specific in the workplace merely because such vulgarity is rampant in that workplace. *Id.* The Court must determine the context of offending words or conduct in its analysis. *Id.* Similarly,

the Court may consider words and conduct that are sufficiently gender-specific and are either severe or pervasive enough in its analysis, even if the words are not directed towards Ms. Vidovic. *Id.*

Before turning to the record evidence, the Court must also consider what evidence it may consider. Section 2000e-5(e)(1) provides

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C.A. § 2000e-5. The statute "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). However, the Court can consider the "entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period," for "the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *Id.*

Although the City argues that much of the evidence of the events from January 2010 through May 2014 should not be considered by the Court, the Court need not resolve that issue because even if all of Ms. Vidovic's proffered evidence were considered, the Court would still grant the City's Motion for Ms. Vidovic's hostile work environment claim. Ms. Vidovic has failed to demonstrate sufficient record evidence

tending to show that that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment.

The complained of conduct, relative to the length of Ms. Vidovic's employment, was not very frequent. Over the course of her employment, the conduct of which Ms. Vidovic complains appears to have occurred fairly infrequently and on an isolated basis. *See, e.g., Reyna v. ConAgra Foods, Inc.*, 506 F.Supp.2d 1363, 1373 (M.D. Ga. 2007) (noting that the record contained evidence that the defendant made "racially derogatory comments 'a lot' and on 'a daily basis' . . . for the fifteen to eighteen months [p]laintiff worked under [the supervisor]."). The main case cited to by Ms. Vidovic in support of her hostile work environment theory, *Smart v. City of Miami Beach, Fla.*, No. 10-21667-CIV, 2011 WL 5825654, (S.D. Fla. Nov. 16, 2011), found that over twenty instances of alleged incidents over a five year period, "though reprehensible, are relatively infrequent." *Id.*, at *5. Another instructive case from the Eleventh Circuit, cited by the district court in *Smart*, shows that repeated incidences of inappropriate and harassing behavior of a similar quantity as this one were not frequent for purposes of the objective component of the hostile workplace analysis. *See Mitchell v. Pope,* 189 F. App'x 911, 913–14 (11th Cir.2006) (holding that where plaintiff alleged sixteen instances of offensive conduct occurring over four years the conduct complained of was not very frequent).

The Court must now consider the severity of the alleged conduct. Although not cited in her Response, the Court considers the instances in which Ms. Vidovic was propositioned for sex from two male supervisors, and the statements and actions of Justin

Battles asserted in Ms. Vidovic's Statement of Disputed Facts. *See Doc. No. 84-1* at 16,

n. 42. The other identified instances in her Response are the following:

1. A male fire chief asked the plaintiff questions about being a single mother, talked with her about the mothering role, said she reminded him of his daughter and that he normally only hires men who hunt, fish, or camp and "chose her to watch his granddaughter when she visited the station[.]"
2. Others at the station covered the plaintiff's operating procedures book with cut-out pieces of *Cosmopolitan* magazine.
3. A male chief ignored her, rarely conversed with her, and stated that women should not be in the fire service and that "it was up to [Ms. Vidovic] to prove otherwise." Furthermore, this chief told Ms. Vidovic "if she did not fear him she would not respect him and that women should be in the kitchen."
4. Another male chief told the plaintiff that if she filed a hostile work environment claim that it would make her career very tough and that he wanted her to get pregnant so she could be his secretary.
5. A male firefighter told the plaintiff that she was hot and beautiful.
6. A male lieutenant referred to Ms. Vidovic as "kid" but referred to other male firefighters by their name and rank and stated that he would not work with her and another female assigned to his shift.
7. A male firefighter told the plaintiff that if she ever brought tampons to work again that she would be suspended and made her scrub station toilets.

*Response Memorandum*, Doc. No. 84 at 5-6. When viewed in the context of the record

evidence, the Court is of the opinion that this conduct, which the Court must accept as

true and in the context of the work environment, is not severe for purposes of the objective

analysis. While the statements are certainly boorish and unprofessional, they are not so

severe compared to other hostile workplace counts that have been permitted to be

submitted to juries. *See Smart,* 2011 WL 5825654. The Court further notes that Ms.

Vidovic has not identified in the record where a male firefighter ever told her that he

wished her to get pregnant so that he could be his secretary. *Response*, Doc. No. 84-1

at 1-24 and *Response Memorandum*, Doc. No. 84 at 6.

Similarly, the record evidence does not indicate that the complained of conduct

was ever physically threatening. The Court, in its extensive review of the voluminous

record evidence and the briefs of the parties has not found any evidence tending to show

or from which the Court may derive the inference that Ms. Vidovic was subjected to physically threatening behavior. Her Response does not argue otherwise. *See Response*, Doc. No. 84 at 6. While the evidence cited in the response may be deemed offensive utterances and actions, the Court does not believe that it rises to the level of being objectively humiliating.

Finally, the Court sees no evidence that the complained of conduct ever unreasonably interfered with Ms. Vidovic's job performance. Instead, Ms. Vidovic is quite clear in her affidavit that she "never turned down or failed to do required duties" and "did not avoid lifting stretchers, buckets of water or other heavy objects." *Vidovic Affidavit*, Doc. No. 84-35, ¶ 19. She further affirmed that she was able to perform her duties as a firefighter in active situations. *Id.*, ¶ 20. The Court does not see record evidence tending to show that Ms. Vidovic suffered any diminished job performance because of the alleged misconduct.

Taken together, the Court finds that Ms. Vidovic has failed to demonstrate that her work environment was objectively hostile. Accordingly, summary judgment is entered against Ms. Vidovic and in favor of the City on this count.

## VII. Pregnancy Discrimination

Title VII forbids discrimination on the basis of pregnancy, childbirth or related medical conditions." *Holland v. Gee*, 677 F.3d 1047, 1054 (11th Cir. 2012). Title VII permits a plaintiff to prevail if she can demonstrate that her pregnancy was a motivating factor for an employment decision. *Id.* When ruling, the Court recognizes the Supreme Court's admonition that "[c]oncern for a woman's existing or potential offspring historically has been the excuse for denying women equal employment opportunities." *Int'l Union, UAW*

*v. Johnson Controls, Inc.*, 499 U.S. 187, 211, 111 S. Ct. 1196, 1210, 113 L. Ed. 2d 158 (1991).

The Court must first address *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1343, 191 L. Ed. 2d 279 (2015). The Supreme Court has explained that the pregnancy provision of Title VII was not intended to grant workers an "unconditional most-favored-nation status." *Id.* at 1346. Although the Supreme Court recognized that workers may make out a disparate treatment claim via indirect evidence through the *McDonnell Douglas* framework, the application of that framework was never intended to be an inflexible rule. *Id.* at 1353. Instead, "an individual plaintiff may establish a prima facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII. *Id.* at 1354. Accordingly, the Court reaffirms its prior ruling that Ms. Vidovic may proceed to trial on her theory that she was intentionally discriminated against based on her status as a pregnant woman when she was given a negative performance evaluation that prevented her from receiving a pay increase and her termination. *See id.*, (Alito, J. concurring) (stating that an employer engages in unlawful pregnancy discrimination if and only if the employer's intent is to discriminate on the basis of the plaintiff's pregnancy).

In large part, the Court has already conducted its analysis finding that there is a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination based on Ms. Vidovic's status as a pregnant woman. *See Holland*, 677 F.3d at 1056. The Court has already explained that a reasonable jury could infer that Ms. Vidovic was discriminated against based on her pregnancy when she received a negative

performance evaluation that adversely affected her ability to receive a pay raise and in her termination.

But her claims that the City failed to accommodate her during and after her pregnancy deserve closer scrutiny. To establish a prima facie case for failure to accommodate, Ms. Vidovic must show (1) that she belongs to the protected class, (2) that she sought accommodation, (3) that the employer did not accommodate her, and (4) that the employer did accommodate others similar in their ability or inability to work. *Young*, 135 S. Ct. at 1343 (internal quote omitted). Clearly, Ms. Vidovic has demonstrated evidence that she was a pregnant woman who sought an alternative light-duty schedule that Tampa Fire Rescue did not grant her. However, her alternate light-duty claim must fail because she has failed to identify any other employee who was accommodated using the same or similar proposed light-duty schedule as her. The record evidence is undisputed that Ms. Vidovic had access to the same light-duty schedule as other non-pregnant firefighters but that she simply sought a different schedule not offered by Tampa Fire Rescue.

Accordingly, Ms. Vidovic may proceed on her pregnancy discrimination claim based on her receipt of a negative performance evaluation that made her ineligible for a pay increase, her termination, and her failure to be promoted. She may not proceed on the theory that Tampa Fire Rescue failed to accommodate her request for light-duty or that she was not accommodated for having an area to pump breast milk.

(Space left intentionally blank.)

## VIII. Conclusion

Accordingly,

It is ORDERED that the Motion is **GRANTED IN PART AND DENIED IN PART** as detailed in this opinion.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this _12th_ day of October, 2017.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record